Edith Ellen **DOGU**, Plaintiff and Appellant,

v.

Turhan S. **DOGU**, Defendant and Respondent.

No. 17603.

Supreme Court of Utah.

Aug. 2, 1982.

Pete N. Vlahos of Vlahos, Perkins & Sharp, Ogden, for plaintiff and appellant.

C. Gerald Parker of Parker, Thornley & Critchlow, Ogden, for defendant and respondent.

OAKS, Justice:

This appeal from a divorce decree challenges the district court's division of (1) the assets and value of the husband's professional corporation, (2) his rights under various retirement funds, and (3) a condominium located in Turkey.

The parties were divorced in 1981, after nearly 24 years of marriage. Of the three children born during the marriage, only one was not yet emancipated, a 17-year-old daughter who resided with her mother. At the time of the divorce, the husband was 56 years of age. He had a well-established medical practice in anesthesiology. His wife, appellant here, was 60 years of age. She had been employed only minimally during the marriage, was unemployed at the time of the divorce, and was entirely dependent on her husband for her financial support.

With the exceptions challenged on appeal and described hereafter, the district court ordered an essentially equal division of the parties' property, including the net proceeds from sale of the family home. Appellant was granted custody of their minor daughter, together with $200 per month child support. Appellant was awarded alimony of $1,500 per month, to be reduced to $750 per month on respondent's retirement.

## I. PROFESSIONAL CORPORATION

■ The district court awarded respondent as his separate property the entire interest in his professional corporation, of which he is the sole shareholder and only employee and from which he draws a salary and bonuses as needed. Aside from its liquid assets of $25,000 in accounts receivable and $26,300 in bank accounts and savings certificates, the corporation's only earning power is in respondent's ability to work. Consequently, the corporation's value and respondent's income fluctuate. In 1977, his taxable income from the corporation was $36,973; in 1978, it was $60,854. In 1979, his income was $108,675, but that amount of salary and bonuses reflected a year in which respondent consistently worked between 60 and 110 hours a week. He testified that he would be unable to sustain that pace because of his age and ill health. In addition, the hospital where he worked as one of three anesthesiologists would soon engage a fourth, which would reduce his hours and income in the future.

We find no abuse of discretion in the district court's disposition of the value of the professional corporation. The value of the corporation's bank accounts and savings certificates were an equitable offset to the court's award of an equivalent amount in savings certificates, bank accounts, and stock to appellant. The corporation's accounts receivable represent deferred income from which respondent may meet his ongoing alimony and child support obligations to appellant.

## II. RETIREMENT FUNDS

■ Respondent argues that since none of his separate retirement funds can be withdrawn until he retires, the total value of these funds, $86,730, should not be subject to division between the parties even though they were accumulated during the marriage.

In *Bennett v. Bennett,* Utah, 607 P.2d 839 (1980), we held that it was error for the trial court to view as a marital asset that half of a husband's retirement fund contributed by his employer. But that holding

reflected a failure of proof. It was based on the fact that the employer's contribution had "no present value" and therefore should not have been used "as one of the significant predicates in the Court's determination of property division between the parties...." *Id.* at 840–41. In contrast, the district court included in the marital property the portion of the retirement fund contributed by the husband, even though he had not yet retired and his actual enjoyment of any retirement benefit was purely prospective. This inclusion, which was not challenged on appeal, is in accord with the general rule established in *Englert v. Englert,* Utah, 576 P.2d 1274, 1276 (1978), that the trial court's duty to make an equitable division of property in a divorce action "encompasses all of the assets of every nature possessed by the parties, whenever obtained and from whatever source derived; and that this includes any such pension fund or insurance."

Although the record in this case indicates that respondent has not yet retired and therefore cannot withdraw any of his retirement funds, there is no question on the value of these funds. Respondent himself testified that his retirement funds consist of (1) TIAA and CREF accounts created while he was a medical school professor in Pennsylvania, and totalling approximately $27,000; (2) a Keogh account containing $10,075; and (3) a pension and profit-sharing trust, set up through his professional corporation, totalling $49,655 in certificates and savings accounts. Under the rule of *Englert, supra,* these retirement funds, totalling $86,730 at the time of the divorce, were a marital asset which the court was required to consider in its determination of an equitable property division between the parties. Since it appears that this was not done, this portion of the property settlement decree will be vacated and remanded for reconsideration by the district court.

To aid in that reconsideration, we elaborate on considerations appropriate to the division of marital property in retirement funds where, as in this case, that subject is inextricably involved with the court's award of alimony.

Respondent argues that even if his retirement funds are considered a marital asset, the district court made a fair and equitable decision to award him the entire $86,730 as a *res* from which he would pay the $750-per-month alimony to appellant after his retirement. If the decree had been drawn so that this marital asset would assure the payment of alimony in all events, it would be well within the bounds of discretion on the facts of this case. But respondent's argument fails because there is no such assurance.

The decree fails to treat the contingency of respondent's predeceasing appellant, either before or after respondent's retirement. This is not a remote contingency. At the time of trial, respondent was 56 years old. He testified that he was tired and in ill health, that he had suffered a slight stroke and had been hospitalized for double vision in 1978, and that a surgeon on the hospital staff told him informally that with his condition he had only a 50% likelihood of surviving 5 years.

If respondent predeceased her, appellant would lose her means of support. Under the district court's decree, the right to alimony terminates "upon the death of either [party] ...."[1] Appellant has no retirement benefits of her own. So far as the record discloses, she has no social security entitlement.[2] Neither would she have any claim against respondent's estate for her support since an ex-wife does not qualify as a "surviving spouse" entitled to an elective share of her husband's estate. U.C.A., 1953, §§ 75–2–201, 75–2–803(1). Hence, under

---

1. This is in accord with the general rule that a spouse's right to periodic payments of alimony terminates upon the death of the supporting spouse. *Hilton v. McNitt,* 49 Cal.2d 79, 315 P.2d 1 (1957); *Elmer v. Elmer,* 132 Colo. 57, 285 P.2d 601 (1955); *O'Neal v. Morris,* 7 Wash. App. 157, 498 P.2d 326 (1972); *Warren v. War-* ren, Wyo., 361 P.2d 525 (1961); *Annot.,* 39 A.L.R.2d 1406 (1955).

2. On remand, further evidence may disclose that appellant is entitled to some social security benefits as a "divorced wife" of respondent under 42 U.S.C. § 402(b) (1976 & Supp. IV 1980) and 20 C.F.R. § 404.331 (1981).

the decree challenged here, where respondent receives all retirement funds accumulated during the marriage, appellant may be deprived of all ongoing financial support at the very time of life when she is most in need. Such a result frustrates the purpose of alimony to "provide support for the wife . . . and to prevent the wife from becoming a public charge." *Georgedes v. Georgedes,* Utah, 627 P.2d 44, 46 (1981); *English v. English,* Utah, 565 P.2d 409, 411–12 (1977). Such a result is also at odds with the closely related equitable principles that govern the division of the parties' marital property.

■ As this Court said in *DeRose v. DeRose,* 19 Utah 2d 77, 79, 426 P.2d 221, 222 (1967),

[W]hile the determinations of the trial court are given deference and not disturbed lightly, changes should be made if that seems essential to the accomplishment of the desired objectives of the decree: that is, to make such an arrangement of the property and economic resources of the parties that they will have the best possible opportunity to reconstruct their lives on a happy and useful basis for themselves and their children.

This is such a case.

On remand, the district court may repair this deficiency in several different ways. (1) The court could order that respondent elect a joint and survivor annuity under each retirement fund where that is an option, with appropriate adjustment to his alimony obligation during the period following retirement. (2) If respondent's retirement rights permit this option, the court could order that respondent elect that upon his retirement appellant be paid, in lieu of alimony after retirement, a lump sum equal to one-half the value of the retirement benefit as of the date of divorce, plus investment income accumulated thereafter. (3) The court might order that appellant's rights to alimony continue after respondent's death (until her own death or remarriage). *E.g., DeRiemer v. Old National Bank,* 60 Wash.2d 686, 690, 374 P.2d 973,

975 (1962); *Cross v. Cross,* 5 Ill.2d 456, 462, 125 N.E.2d 488, 491 (1955). *Cf. Wilson v. Wilson,* 5 Utah 2d 79, 296 P.2d 977 (1956) (affirming alimony award of $50 per month until the plaintiff's remarriage or until the sum of $2,400 is paid, said sum to be "a charge upon the estate of defendant should he die prior to the full payment thereof").[3] Under this alternative, respondent would have full ownership of the retirement funds, but appellant would have a claim against his estate for continued alimony.

Each of the foregoing alternatives assumes that respondent lives long enough to retire. In a case like this, the court should also provide for the eventuality that respondent dies before retirement. If respondent is awarded full ownership of the retirement funds, the court could order that upon his death before retirement the commuted value of appellant's post-retirement alimony for the period of her life expectancy be a claim against respondent's estate. In the alternative, if respondent's retirement rights permit this option, it could also order that respondent elect that upon his death prior to retirement appellant be paid the cash value of one-half of the retirement right as of the date of the divorce, plus investment income accumulated thereafter.

There may be other alternatives. In any case, the district court may require additional evidence on the nature of the retirement funds and the needs and preferences of the parties in order to exercise its statutory power to divide the retirement funds equitably.

## III. TURKISH CONDOMINIUM

■ In 1962, the parties acquired a condominium in Turkey for approximately $5,000. Since 1964, respondent's sisters have lived there rent-free. Neither party could do more than guess at the present value of the property. (The guesses varied from $2,900 to $50,000.) In any event, evidence at trial indicated that only persons who are citizens of Turkey can own real

---

**3.** *Contra: Chappell v. Nash,* Mo.App., 399 S.W.2d 253, 256 (1965); *In re Estate of Bern-* *stein,* 25 Misc.2d 717, 203 N.Y.S.2d 191 (1960).

estate in that country. Because both of these parties gave up their Turkish citizenship after 1962 (to become U.S. citizens), neither can now legally hold or dispose of this property. The trial court ordered "[t]hat if either of the parties is able to exercise ownership over the condo" each shall be entitled to a half interest therein. Appellant argues that the condominium should have been awarded to respondent with an equivalent award of liquid assets to her. To the contrary, we think the district court's order was a sensible and equitable resolution of an unusual problem and certainly no "clear abuse of discretion." *Georgedes v. Georgedes,* 627 P.2d at 46; *Kerr v. Kerr,* Utah, 610 P.2d 1380, 1382 (1980).

For the reasons stated herein, the decree is affirmed except insofar as it relates to the retirement funds and any portion of the provisions for alimony that may require modification in relation thereto, and the cause is remanded for further proceedings consistent with this opinion. No costs awarded.

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.