**Gary V. PETERSEN, Plaintiff and Appellant,**

v.

**Julie A. PETERSEN, Defendant and Respondent.**

No. 860007–CA.

Court of Appeals of Utah.

May 18, 1987.

Paul M. Belnap, Strong & Hanni, Salt Lake City, for plaintiff and appellant.

Pete N. Vlahos, Vlahos & Sharp, Ogden, for plaintiff and appellant.

Before ORME, JACKSON and BENCH, JJ.

## OPINION

ORME, Judge:

The appellant seeks a reversal or readjustment of the property division and alimony awarded to his former wife upon their divorce. His challenge focuses on a $120,000 property settlement given to his ex-wife to reflect her interest in his medical degree. We affirm the trial court's basic disposition, but require amendment of the decree insofar as the $120,000 award is concerned.

## FACTUAL BACKGROUND

The parties were married in September 1963 when they were both entering their senior year of college. Both graduated with Bachelor's degrees. Dr. Petersen continued his education and obtained a Master's degree, while Mrs. Petersen worked as an elementary school teacher to help finance her husband's education. After receiving his Master's degree, Dr. Petersen entered medical school. During medical school, Dr. Petersen earned approximately $1,000 per year in income. The couple also took out a student loan and received some money from Mrs. Petersen's parents. While her husband was in medical school, Mrs. Petersen worked one year on a full time basis and three years part time.

When Dr. Petersen began his internship, Mrs. Petersen stopped working to stay at home with their child. During the next fifteen years, Mrs. Petersen was not employed outside the home and her teaching certification expired.

By the time of their divorce, the parties had been married twenty years and had six children under the age of 18. The decree gave Mrs. Petersen custody of the six minor children, the family residence subject to the first mortgage, most of the family furniture, and two automobiles. She was awarded $300 per month per child as child support, $1,000 per month alimony, and the cash property settlement of $120,000, which Dr. Petersen was to pay in installments of $1,000 per month without interest.

Under the decree, Dr. Petersen received his professional corporation, the total interest in his pension and profit sharing plan, two condominiums, a boat, an undivided one-seventh interest in a cabin near Bear Lake, and other rental property. He also was given the right to claim all six children as dependents for income tax purposes.

The trial court explained the $120,000 cash settlement as follows:

> The Court believes that this case is classic, in that defendant is entitled to a property award reflecting an ownership interest of the defendant in plaintiff's medical degree. It is abundantly clear that defendant helped plaintiff earn that degree during their marriage, and that plaintiff's ability to earn is based upon that degree. Further, that following the earning of the degree and the entry into the medical practice, by mutual agreement, defendant undertook the raising and nurturing of the children as her responsibility to the marital partnership, while plaintiff practiced medicine. It is difficult to find in the evidence presented any system for the measurement of the value of the degree, and the Court must therefore deal with the case mostly upon an alimony basis. To deal with the case fully upon an alimony basis is not fair to the defendant, inasmuch as any effort to restructure her life by seeking to better her employment opportunities or to remarry will operate against her alimony rights. Defendant is therefore awarded $1,000 per month permanent alimony and a lump sum property award in respect to the medical degree in the amount of $120,000, payable in installments of $1,000 per month from the date of the decree.

On appeal, Dr. Petersen argues that the division of marital property was inequitable, particularly the $120,000 property settlement given to his wife. Dr. Petersen argues that it was error to characterize "his" medical degree as marital property and require him to cash out Mrs. Peter-

sen's interest therein over a 10–year period.

## STANDARD OF REVIEW AND PRELIMINARY CONSIDERATIONS

■ Generally, the trial court is permitted considerable discretion in adjusting the financial and property interests of the parties to a divorce action, and its determinations are entitled to a presumption of validity. *E.g., Burnham v. Burnham*, 716 P.2d 781, 782 (Utah 1986). And although appellate courts may weigh the evidence and substitute their judgment for that of the trial court in divorce actions, as the Supreme Court stated in *Turner v. Turner*, 649 P.2d 6 (Utah 1982), "this court will not do so lightly and merely because its judgment may differ from that of the trial judge. A trial court's apportionment of property will not be disturbed unless it works such a manifest injustice or inequity as to indicate a clear abuse of discretion." 649 P.2d at 8.

In the present case, the trial court appropriately attempted to equalize the parties' respective standards of living. *See Olson v. Olson*, 704 P.2d 564, 566 (Utah 1985). Dr. Petersen was found capable of earning $100,000 per year while Mrs. Petersen's ability to obtain recertification and secure a teaching contract was found to be speculative at best. Even if she succeeded, she would earn only one-fourth to one-fifth of what Dr. Petersen would earn annually. The trial court spoke of the difficulty of measuring the value of Dr. Petersen's degree. The court chose to balance the inequalities between the parties partly with the alimony award. However, the trial court did not want Mrs. Petersen to lose all of her entitlement upon remarriage, so the trial court provided for an additional $120,-000 as a property award, payable in $1,000 monthly installments. Characterization of these payments as a property award created the main issue for appeal.

## DEGREES AS PROPERTY

■ The question of whether an advanced degree is a property interest subject to division upon divorce is one of first impression at the appellate level in Utah.[1] However, the majority of jurisdictions that have considered the issue have held that advanced degrees or professional licenses are not property. *Wisner v. Wisner*, 129 Ariz. 333, 631 P.2d 115, 122 (Ariz.App.1981) (husband's medical license and board certificate are not property subject to division, but education is a factor to be considered in arriving at equitable property division, maintenance, and child support); *In re Marriage of Aufmuth*, 89 Cal.App.3d 446, 152 Cal.Rptr. 668, 677 (1979) (legal education not a property right); *In re Marriage of Graham*, 194 Colo. 429, 574 P.2d 75, 77 (1978) (MBA degree not marital property subject to division); *In re Marriage of Hortsman*, 263 N.W.2d 885, 891 (Iowa 1978) (law degree is not a distributable asset upon divorce; future earnings are); *Olah v. Olah*, 135 Mich.App. 404, 354 N.W.2d 359, 361 (Mich.App.1984) (medical degree not property or marital asset); *Mahoney v. Mahoney*, 91 N.J. 488, 453 A.2d 527, 536 (1982) (courts may not make any permanent distribution of the value of professional degrees and licenses, whether based on estimated worth or cost); *Ruben v. Ruben*, 123 N.H. 358, 461 A.2d 733, 735 (1983) (graduate degree acquired by one spouse during the marriage is not an asset subject to division upon divorce); *Muckleroy v. Muckleroy*, 84 N.M. 14, 498 P.2d 1357, 1358 (1972) (medical license is not

---

1. In *Dogu v. Dogu*, 652 P.2d 1308 (Utah 1982), the Utah Supreme Court dealt with the valuation of a professional corporation. In *Dogu*, the husband was awarded his professional corporation, and his wife was awarded property to offset its value. 652 P.2d at 1309. Although the proper characterization of a medical degree, as in the present case, and the valuation of a professional medical corporation, as in *Dogu*, may involve related questions, the legal issues regarding the two are distinct.

In *Tremayne v. Tremayne*, 116 Utah 483, 211 P.2d 452 (1949), the Supreme Court upheld the trial court's property division and award of alimony to the wife, referring to the wife's working to help her husband through school; the fact that, with the divorce, the wife was deprived of the benefits of his increased earnings; and the discrepancy in their earning capacities. *Tremayne* does not address the issue of whether an advanced degree or license is marital property.

community property); *Hubbard v. Hubbard*, 603 P.2d 747, 750–51 (Okl.1979) (medical license not property but wife entitled to compensation for her investment).[2]

These cases and others are consistent with our understanding of what "property" is and what an educational degree is. Property can be bought, sold, and devised. Bona fide degrees cannot be bought; they are earned. They cannot be sold; they are personal to the named recipient. Upon the death of the named recipient, the certificate commemorating award of the degree might be passed along and treasured as a family heirloom, but the recipient may not, on the strength of that degree, practice law or medicine. In this case, the court awarded the parties' home to Mrs. Peterson. But it might have awarded the home to Dr. Petersen or it might have ordered the home sold and the net proceeds divided. The court had no such alternatives with the medical degree, precisely because the degree is not property. Consideration of some of the cases cited above and others supports our fundamental conclusion and demonstrates the range of related problems.

In *Muckleroy v. Muckleroy*, 84 N.M. 14, 498 P.2d 1357 (1972), it had been argued that the husband's education was the product of the joint labor and industry of both parties, so that after their marriage it was community property. The New Mexico Supreme Court rejected this argument and concluded:

> A medical license is only a permit issued by the controlling authority of the State, authorizing the individual licensee to engage in the practice of medicine. The medical license may be used and enjoyed by the licensee as a means of earning a livelihood, but it is not community property because it cannot be the subject of joint ownership.

84 N.M. at 15, 498 P.2d at 1358.

The same issue arose as to an M.B.A. degree earned by the husband in *In re*

*Marriage of Graham*, 194 Colo. 429, 574 P.2d 75 (1978). Again, the concept of an advanced degree being property was rejected:

> An educational degree, such as an M.B.A., is simply not encompassed even by the broad views of the concept of "property." It does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed, or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. In our view, it has none of the attributes of property in the usual sense of that term.

194 Colo. at 432, 574 P.2d at 77.

The wife in *Graham* had worked full time throughout the couple's six-year marriage, and had contributed 70 percent of the family income in addition to most of the household work while her husband was acquiring his degree. The trial court found that the degree was jointly owned property and had determined that the future earning value of the M.B.A. degree to Mr. Graham was $82,836.00. Mrs. Graham was awarded $33,134.00 of that amount. On appeal, the state supreme court affirmed the reversal of the trial court by the court of appeals. 574 P.2d at 76. The fact that the decision left Mrs. Graham with nothing to show for her six years of labor prompted a three judge dissent which strongly urged that the husband's increased earning power represented by the degree should be considered marital property, where there was no accumulated property and the spouse

---

**2.** The question of whether an advanced degree or professional license is marital property subject to division upon divorce has attracted considerable attention from legal scholars. For one of the better reasoned discussions, see Note,

*Property Distribution in Domestic Relations Law: A Proposal for Excluding Educational Degrees and Professional Licenses from the Marital Estate,* 11 Hofstra L.Rev. 1327 (1983).

who subsidized the degree was ineligible for maintenance.[3] 574 P.2d at 78–79.

The equitable concerns addressed in the *Graham* dissent are reflected in the few cases that have found an advanced degree or professional license to be marital property.

In *Daniels v. Daniels,* 185 N.E.2d 773 (Ohio 1961), the court held that the right to practice medicine was in the nature of a franchise and constituted property which the trial court had a right to consider in making an award of alimony. In *Daniels,* the parties to the action were married while students at a university. During the time of their marriage the wife received her degree in business administration and the husband received a degree in medicine one year later. Each contributed toward his or her own maintenance and education, the balance in financial support for the family coming from the wife's father, who contributed sizable sums to the marriage. At the time of their divorce, neither party had much in the way of tangible assets. The court awarded $24,000 in lump sum alimony, but did not actually divide the value of the medical degree. 185 N.E.2d at 776.

Recently, in *O'Brien v. O'Brien,* 66 N.Y.2d 576, 489 N.E.2d 712, 498 N.Y.S.2d 743 (1985), the New York Court of Appeals affirmed the trial court's holding that a license to practice medicine acquired during the marriage is marital property subject to division. In *O'Brien,* the wife was held entitled to a 40 percent interest in her husband's medical license. The wife had contributed approximately 76 percent of the couples' total income while the husband obtained his license. The breakdown of the marriage occurred shortly after the husband completed his schooling, and the only tangible asset existing after their nine-year marriage was the husband's medical license.

The New York court distinguished its analysis in *O'Brien* from that of other jurisdictions which have found a license or advanced degree not to be marital property. As the *O'Brien* court explained:

Plaintiff does not contend that his license is excluded from distribution because it is separate property; rather, he claims that it is not property at all but represents a personal attainment in acquiring knowledge. He rests his argument on decisions in similar cases from other jurisdictions and on his view that a license does not satisfy common-law concepts of property. Neither contention is controlling because decisions in other States rely principally on their own statutes, and the legislative history underlying them, and because the New York Legislature deliberately went beyond traditional property concepts when it formulated the Equitable Distribution Law.

66 N.Y.2d at 583, 489 N.E.2d at 715, 498 N.Y.S.2d at 746. New York's highest court acknowledged in *O'Brien* that their statute creates a new species of property previously unknown at common law or under prior statutes. 66 N.Y.2d at 586, 489 N.E.2d at 719, 498 N.Y.S.2d at 748. Critical portions of the New York Equitable Distribution Law provide that in making an equitable distribution of marital property, the court shall consider the efforts one spouse made to the other spouse's career or career potential and the difficulty of evaluating an interest in a profession. 66 N.Y.2d at 584, 489 N.E.2d at 715–16, 498 N.Y.S.2d at 746–47. Thus, the analysis in *O'Brien,* although illustrative of the equitable concerns for the working spouse who supports the other through an advanced degree, 66 N.Y.2d at 585–88, 489 N.E.2d at 716–18, 498 N.Y.S.2d at 746–48, is limited in application because of the pivotal role of the unusual and expansive distribution statute enacted in New York.

 We agree with the majority opinion in *Graham* that an advanced degree is or confers an intangible right which, because of its character, cannot properly be characterized as property subject to division between the spouses. No special statute, as in New York, permits us to treat the degree as though it were property. On

---

3. In *Graham,* the wife did not request alimony because a Colorado statute, Colo.Rev.Stat. § 14–10–114 (1973), restricted the court's power to award maintenance to cases where the spouse seeking it was unable to support himself or herself. 574 P.2d at 79.

the other hand, criteria for an award of support in Utah are not so rigid as in Colorado, preventing the harsh result of *Graham.* In this state, traditional alimony analysis is the appropriate and adequate method for making adjustments between the parties in cases of this type.[4]

## AWARD IN THIS CASE

As indicated, the trial court was in error when it awarded Mrs. Petersen the $120,000 cash settlement to reflect her share of the value of her husband's medical degree. Nonetheless, the court's basic disposition was fair and can be sustained if the $1,000 monthly payments which Dr. Petersen was to make in satisfaction of that obligation are recharacterized as additional alimony, a result which is readily supported by the trial court's findings.

In reviewing the court's findings, we find ample evidence to affirm the property division aside from the $120,000 cash settlement. As the Supreme Court stated in *Fletcher v. Fletcher,* 615 P.2d 1218 (Utah 1980), "[t]here is no fixed formula upon which to determine a division of properties, it is a prerogative of the court to make whatever disposition of property as it deems fair, equitable, and necessary for the protection and welfare of the parties." 615 P.2d at 1222. Although Dr. Petersen was awarded a smaller percentage of the marital assets, he received all but one of the income producing assets: his professional corporation, his pension and profit sharing plan, two condominiums, and other business interests. The parties were to share evenly in a $10,000 investment corpo-

ration. We find the basic property division equitable.

As for the cash settlement payable in monthly installments of $1,000, it is properly affirmed as alimony, making Mrs. Petersen's entire alimony award $2,000 per month. Criteria considered in determining a reasonable award of support must include the financial conditions and needs of the spouse in need of support, the ability of that spouse to produce sufficient income for his or her own support, and the ability of the other spouse to provide support. *Jones v. Jones,* 700 P.2d 1072, 1075 (Utah 1985).

In this case, then, the first factor to be considered is the financial condition and needs of Mrs. Petersen. For over ten years, Mrs. Petersen and her family enjoyed a very comfortable lifestyle. She now must make mortgage payments on the home and pay for the ordinary expenses of food, clothing and transportation. Other than the one-half interest in the investment corporation, Mrs. Petersen was awarded none of the income-producing assets. She has no outside income.

The second factor to be considered is Mrs. Petersen's ability to produce a sufficient income for herself. Although Mrs. Petersen is a college graduate with a Bachelor's degree and is trained as a school teacher, she is not currently certified. She would require additional training to become certified and, even if certified, her ability to produce income would be one-fourth to one-fifth of what Dr. Petersen's income has provided the family. The trial court found

---

4. In cases like the instant one, life patterns have largely been set, the earning potential of both parties can be predicted with some reliability, and the contributions and sacrifices of the one spouse in enabling the other to attain a degree have been compensated by many years of the comfortable lifestyle which the degree permitted. Traditional alimony analysis works nicely to assure equity in such cases.

In another kind of recurring case, typified by *Graham,* where divorce occurs shortly after the degree is obtained, traditional alimony analysis would often work hardship because, while both spouses have modest incomes at the time of divorce, the one is on the threshhold of a significant increase in earnings. Moreover, the

spouse who sacrificed so the other could attain a degree is precluded from enjoying the anticipated dividends the degree will ordinarily provide. Nonetheless, such a spouse is typically not remote in time from his or her previous education and is otherwise better able to adjust and to acquire comparable skills, given the opportunity and the funding. In such cases, alimony analysis must become more creative to achieve fairness, and an award of "rehabilitative" or "reimbursement" alimony, not terminable upon remarriage, may be appropriate. *See, e.g., Haugan v. Haugan,* 117 Wis.2d 200, 343 N.W.2d 796 (1984); *Mahoney v. Mahoney,* 91 N.J. 488, 453 A.2d 527 (1982).

that the chance of her being able to secure a teaching contract was "speculative." During most of the marriage, Mrs. Petersen was not employed outside the home. She stopped working, primarily at the urging of her husband, and devoted her time to raising their six children. It is unreasonable to assume that she will be able immediately to enter the job market and support herself in the style in which she had been living before the divorce. *See Jones v. Jones*, 700 P.2d 1072, 1075 (Utah 1985).

The final factor to be considered is the ability of Dr. Petersen to provide support. This is the proper realm in which to consider advanced degrees or professional licenses. An advanced degree is ordinarily an indicator of potential future earnings. In addition, the attainment of a degree by one spouse often results in a disparity of income that is likely to last for a great time, particularly in cases like the present one. Dr. Petersen has a history of earning more than $100,000 a year and Mrs. Petersen has not worked for the past fifteen. But it is the discrepancy in their earning power which is the basis for alimony, not the discrepancy in their educations. There is no logical reason, for example, for treating differently a self-trained artist without formal education who earns and will earn $100,000 a year and a doctor with a medical degree who earns and will earn $100,000 a year. Other things being equal, if such an artist divorces his or her spouse, he or she should pay alimony comparable to that paid by such a doctor. Whether a spouse's ability to provide support is the result of an advanced degree or professional license is irrelevant to the analysis. The key is the spouse's *ability*.

In *Savage v. Savage*, 658 P.2d 1201 (Utah 1983), the Supreme Court explained:

> Where a marriage is of long duration and the earning capacity of one spouse greatly exceeds that of the other, as here, it is appropriate to order alimony and child support at a level which will insure that the supported spouse and children may maintain a standard of living not unduly disproportionate to that which they would have enjoyed had the marriage continued.

658 P.2d at 1205. *See Jeppson v. Jeppson*, 684 P.2d 69 (Utah 1984).

In *Savage*, the parties had enjoyed a high standard of living during the marriage and the court upheld an award of $2,000 per month alimony and child support of $500 per month per child. 658 P.2d at 1205. In *Yelderman v. Yelderman*, 669 P.2d 406 (Utah 1983), the Supreme Court upheld an alimony award of $2,500 per month as not excessive. 669 P.2d at 409. We agree that $2,000 per month alimony to Mrs. Petersen is sufficient to help her maintain a standard of living not unduly disproportionate to that which she would have enjoyed if the marriage had continued.[5]

Accordingly, this case is remanded to District Court to amend the decree to provide that Mrs. Petersen receive $2,000 per month alimony and, correspondingly, to delete the $120,000 cash award. The decree

5. It is clear the court viewed the payments to Mrs. Petersen, both those it specifically called alimony and the additional $1,000 monthly payments, as appropriate for her support. It utilized the "property" label in characterizing some of the monthly total as a means to preclude termination of the payments to Mrs. Petersen upon her remarriage. Although the court provided that the $1,000 per month payments not called alimony would terminate in ten years, nothing in the court's findings establishes any particular significance to that point in time. We accordingly see no basis, now that the entire monthly payment is properly characterized as alimony, to require that half of the $2,000 monthly total automatically and arbitrarily terminate at the end of ten years. *Cf. Olson v. Olson*, 704 P.2d 564, 567 (Utah 1985) (court modified divorce decree to delete provision that alimony would terminate after two years where monthly amount was reasonable but two-year limit was not). Of course, it would be proper for the district court to readjust the amount of alimony awarded to Mrs. Petersen if at *any* point in time there develops a material change of circumstances, such as Mrs. Petersen securing gainful employment or if Dr. Petersen's salary drops dramatically through no fault of his own. *See, e.g., Naylor v. Naylor*, 700 P.2d 707, 710 (Utah 1985); *Haslam v. Haslam*, 657 P.2d 757, 758 (Utah 1982). The district court retains continuing jurisdiction in divorce actions to amend alimony. Utah Code Ann. § 30-3-5 (1986). In addition, the alimony awarded to Mrs. Petersen automatically terminates under certain circumstances. *Id.*

is otherwise affirmed. Each party shall bear his or her own costs of appeal.

BENCH and JACKSON, JJ., concur.