Elaine S. SORENSEN, Plaintiff, Respondent, and Cross–Petitioner,

v.

Clifford G. SORENSEN, Defendant, Petitioner, and Cross–Respondent.

No. 890145.

Supreme Court of Utah.

March 30, 1992.

Rehearing Denied July 7, 1992.

Kent M. Kasting, John D. Sheaffer, Salt Lake City, for defendant.

Reid E. Lewis, Jeffrey Robinson, Salt Lake City, for plaintiff.

ON CERTIORARI TO THE UTAH COURT OF APPEALS

HOWE, Associate Chief Justice.

We granted defendant's petition for certiorari to review a decision of the court of

appeals that affirmed the trial court's (1) valuation and distribution of defendant's dental practice and (2) allocation of expert witness fees between plaintiff and defendant in this divorce action. *Sorensen v. Sorensen,* 769 P.2d 820 (Utah Ct.App.1989). We also granted plaintiff's cross-petition in which she assails the court of appeals' (1) reversal of the trial court's award of attorney fees to her and (2) denial of attorney fees to her on appeal.

Plaintiff Elaine S. Sorensen and defendant Clifford G. Sorensen were married in April 1975. Plaintiff sued for divorce in March 1985. Four children had been born to the parties, one of whom died after the divorce decree was entered. The trial court awarded custody of the children to plaintiff and ordered defendant to pay child support and alimony. As part of the property division, the court awarded defendant his dental practice. In valuing that practice, the court found that "the large portion of the value of the practice has to do with goodwill and reputation built up in the practice over the years of marriage." The court relied on the opinion of plaintiff's appraiser in arriving at a value of the practice. Other property of equal value was awarded to plaintiff. Defendant was ordered to pay $2,000 toward plaintiff's attorney fees and one-half the fees of a real estate appraiser selected by the parties.

Defendant appealed to the court of appeals. His principal contention was that the trial court should not have included goodwill and reputation in its valuation of his dental practice. After reviewing the cases and authorities on the subject, the court of appeals affirmed the valuation and affirmed the allocation of payment of the expert's appraisal fees but reversed the trial court's award of $2,000 attorney fees to plaintiff. She was also denied attorney fees on appeal.

## I. VALUATION OF DENTAL PRACTICE

### A. *Goodwill and Reputation*

■ Defendant renews his objection to the inclusion of goodwill in valuing his dental practice. The trial court valued the practice at $100,060, $62,560 of which represented the value of goodwill which depended upon defendant's retiring from his practice and referring his patients to the buyer. The balance consisted of furniture and equipment ($15,330) and discounted accounts receivable ($22,170). In its findings of fact, the trial court implicitly recognized that the goodwill and reputation of Dr. Sorensen were bound up together. In finding of fact No. 7, the court stated:

The defendant should be awarded the dental practice including all equipment and accounts receivable[,] the Court feeling that the large portion of the value of the practice has to do with *goodwill and reputation* built up in the practice over the years of marriage.

(Emphasis added.) In affirming the inclusion of goodwill, the court of appeals relied on what it stated to be the rule in a majority of jurisdictions and also on dicta which it found in our decision in *Gardner v. Gardner,* 748 P.2d 1076, 1078 (Utah 1988). However, in *Gardner* there were twenty-three physicians in the Ogden Clinic. The goodwill of the clinic did not rest on the reputation of any one person as it does in the case of a sole practitioner such as defendant. In a clinic, practitioners may come and go and the institution may have goodwill separate and apart from any one practitioner.

It may well be that if the sole practitioner retires at the time of a divorce and his or her practice is actually sold and an amount is realized over and above the value of the tangible assets, the full amount should be viewed as marital property. We leave that issue for another day. In the instant case, however, no actual sale took place, and defendant continued in his practice at the same location following the divorce. It would not be equitable to require him to pay his wife part of the value ascribed to the goodwill, because the goodwill of a sole practitioner is nothing more than his or her reputation for competency, as pointed out in the dissenting opinion of Judge Jackson in the court of appeals. *Sorensen,* 769 P.2d at 833; *see also Prahinski v. Prahinski,* 321 Md. 227, 582 A.2d 784 (1990). We

recognize that a professional reputation can be valued and that it sometimes can be sold together with the tangible assets of a practice when the professional retires. We believe, however, that unless the professional retires and his practice is sold, his reputation should not be treated differently from a professional degree or an advanced degree: both simply enhance the earning ability of the holder.

We held in *Gardner* and more recently in *Martinez v. Martinez*, 818 P.2d 538 (Utah 1991), that advanced degrees were not marital property which could be valued and then divided between the spouses. The reputation of a sole practitioner is personal, as is a professional degree. Both enhance the professional's earning capacity. The combination of the degree and the practitioner's reputation enables him or her to earn in many cases a substantial income, the fruits of which are shared by the children in the form of child support and by the former spouse in the form of alimony. That is true in the instant case where defendant has been ordered to pay substantial amounts of child support and alimony which were determined in light of his earnings from his dental practice. Requiring defendant to divide with his wife the value of his reputation would not be an "equitable division," which is required by our statute, but would constitute "double counting," which is condemned in property division cases. *See Holbrook v. Holbrook*, 103 Wis.2d 327, 352, 309 N.W.2d 343, 355 (Ct. App.1981); *In re Marriage of Nichols*, 43 Colo.App. 383, 386, 606 P.2d 1314, 1316 (Ct.App.1979) (Ruland, J., concurring).

In affirming the trial court's inclusion of goodwill and reputation in the valuation of the dental practice, the court of appeals warned:

> We emphasize, however, one factor that clearly should not be considered in the valuation of goodwill is the professional spouse's future earning capacity. Consistent with our position that professional degrees are not assets capable of distribution, we similarly hold that the future earning capacity of the divorcing professional should not be considered. To consider future earning capacity in

the valuation of the professional corporation's goodwill would have the effect of double counting, as earning capacity is also utilized in determining an appropriate alimony award. *See, e.g., Olson v. Olson*, 704 P.2d 564, 566 (Utah 1985).

*Sorensen*, 769 P.2d at 829. We believe the court of appeals fell into the very trap it warned against. Plaintiff's appraiser valued defendant's goodwill and reputation based on defendant's future earning capacity, i.e., what would his practice produce in dollar amount during the next few years? The two cannot be separated; future earning capacity comes in large part from goodwill and reputation. *Holbrook*, 103 Wis.2d at 350, 309 N.W.2d at 354. The trial court, too, made the same error when it recognized that it could not and should not place a value on "the human resource of the ability of each party to produce income" but then placed a $62,560 value on defendant's goodwill and reputation:

> The Court refused to set a dollar figure on the human resource of the ability of each party to produce income which may have been acquired during the course of the marriage. The Court specifically finds that such a determination is too speculative in nature and no amount of accounting gymnastics can give to such a computation the degree of credibility such that this Court would feel justified in setting a dollar figure; however, said ability is taken into account by the Court in considering the question of support and alimony.

The illogic and unfairness of treating defendant's reputation as a dentist as a marital asset and dividing its value is demonstrated by the fact that during the marriage the parties invested substantial sums in plaintiff's education, which created an intangible asset in the form of her increased earning capacity. She received a master's degree and only needs to complete her dissertation to get her doctorate; yet that asset was not considered marital property by the trial court. This disparate treatment is illustrated by *In re Marriage of Hall*, 103 Wash.2d 236, 692 P.2d 175 (1984). There, both husband and wife were

medical doctors. The husband worked in a clinic with two other doctors. His gross yearly earnings exceeded $52,000. The wife, a salaried professor at the University of Washington, earned $42,000 per year. She enjoyed a reputation as one of the top ten physicians in the nation in the field of pediatrics genetics. Numerous medical schools across the nation had offered her employment with salaries up to $60,000. 103 Wash.2d at 236–37, 692 P.2d at 176. The trial court found, and the Supreme Court of Washington affirmed, that the husband had professional goodwill which was a marital asset to be divided. The wife was found to have no goodwill due to the fact that she was a salaried physician. 103 Wash.2d at 242, 692 P.2d at 178.

We cannot justify drawing a distinction between a party who holds an advanced degree that enables him or her to command a substantial salary and one who holds an advanced degree but has chosen to be self-employed and has earned a good reputation for skill and competence. Several other courts and judges have noted the lack of any real difference between advanced degrees and the goodwill of a professional sole practitioner. The Wisconsin Court of Appeals in *Holbrook v. Holbrook* stated:

> We are not persuaded that the concept of professional goodwill as a divisible marital asset should be adopted in Wisconsin. We are not obliged nor inclined to follow the twisted and illogical path that other jurisdictions have made in dealing with this concept in the context of divorce.
>
> The concept of professional goodwill evanesces when one attempts to distinguish it from future earning capacity. Although a professional business's good reputation, which is essentially what its goodwill consists of, is certainly a thing of value, we do not believe that it bestows on those who have an ownership interest in the business, an actual, separate property interest. The reputation of a law firm or some other professional business is valuable to its individual owners to the extent that it assures continued substantial earnings in the future. It cannot be separately sold or pledged

by the individual owners. The goodwill or reputation of such a business accrues to the benefit of the owners only through increased salary.

> . . . .
>
> ... Although we recognize the factual distinction between a degreeholder and a partner or shareholder in a law firm, we think the similarities compel analogous treatment in a divorce setting. In both cases, the "asset" involved is not salable and has computable value to the individual only to the extent that it promises increased future earnings.

103 Wis.2d at 350–51, 309 N.W.2d at 354–55 (citation omitted).

Similarly, Judge Ruland, in a special concurring opinion, *In re Marriage of Nichols*, 43 Colo.App. 383, 386, 606 P.2d 1314, 1316 (1979), approved the trial court's observation: "[T]he going concern value [goodwill] is peculiarly tied to the names and skills of the Petitioner [husband].... The Respondent will share in this income by way of maintenance, and to consider it in property settlement would allow her double consideration of that value." *Id.* The Supreme Court of Kansas in *Powell v. Powell*, 231 Kan. 456, 648 P.2d 218 (1982), reviewed cases from other jurisdictions that dealt with professional goodwill, noted the split of authority on the subject, and agreed with those jurisdictions that do not treat professional goodwill as a marital asset to be divided.

### B. *Accounts Receivable and Payable*

■ Defendant next contends that the accounts receivable of his dental practice should not have been included in the value of his practice because they represent deferred income from which he must pay child support and alimony. He relies upon a statement in our opinion in *Dogu v. Dogu*, 652 P.2d 1308 (Utah 1982). There, we held that the trial court did not abuse its discretion by awarding the defendant physician the entire interest in his professional corporation of which he was the sole shareholder. We stated that the corporation had accounts receivable that "represent deferred income" from which the de-

fendant "may meet his ongoing alimony and child support obligations," but did not indicate whether an offsetting amount was awarded to the plaintiff wife. *Id.* at 1309. We now disavow any implication that an accounts receivable cannot be valued and counted as an asset, even though the proceeds may be used as any other asset to pay future alimony or child support. We find no error in the trial court's including the discounted value of the accounts receivable as a marital asset.

■ On the other side of the ledger of defendant's dental practice were $10,129 in accounts payable. Plaintiff's appraiser did not subtract that amount as a liability in arriving at his estimate of value. Instead, he factored in the accounts payable in determining the value of the goodwill of the practice. Since we have determined in part IA of this opinion that no amount should have been included for goodwill and reputation, upon remand the trial court is directed to offset the accounts payable against the accounts receivable.

## II.  EXPERT WITNESS FEES

■ At a pretrial conference before the divorce commissioner, the parties agreed to have their real property appraised by a mutually acceptable appraiser and stipulated that defendant would pay the appraiser, but "[a] final determination of responsibility for said expense [is] to be made by the court." Alan Heiskanen was chosen as the mutually acceptable appraiser, and he testified for plaintiff on the first day of trial. On the second day of trial, defendant called a different appraiser as his witness, apparently because defendant did not agree with Mr. Heiskanen's appraisal. The trial court ordered plaintiff and defendant to divide the fees of Mr. Heiskanen equally. The court of appeals affirmed that order, as we now do. Defendant relies upon *Frampton v. Wilson,* 605 P.2d 771 (Utah 1980), and *Kerr v. Kerr,* 610 P.2d 1380 (Utah 1980), as authority for the proposition that he could not be held liable for witness fees in excess of the statutory rate

of $14 per day,[1] as provided in Utah Code Ann. § 21–5–4.

A short answer to this contention is that the parties' stipulation covered more than the payment of "witness fees." At the time the parties entered into the stipulation, Mr. Heiskanen's appraisal had not yet been made and neither party knew whether he or she would use him as a witness. It appears to us that the intent of the parties was to obtain an appraisal which would provide helpful information to both parties, without regard to whether the appraiser would be called as a witness at the trial. The stipulation contemplated that the trial court would determine who should pay for the appraisal based on equitable considerations without regard to the strictures of the statute and case law regarding "witness fees" for testifying in court. It may be true, as defendant points out, that part of Mr. Heiskanen's fee included his testifying in court for plaintiff. However, there is nothing in the record breaking down his fee between his services in making the appraisal and his later services in testifying at trial for plaintiff. We find no abuse of discretion by the trial court in requiring the parties to equally share the payment of the fees.

## III.  ATTORNEY FEES

■ Plaintiff contends that the court of appeals erred in reversing the trial court's award of $2,000 in attorney fees. The basis of the reversal was insufficiency of evidence as to the reasonableness of the fees. The resolution of this issue involves the interpretation of a stipulation between the parties and accepted by the trial judge on the first day of trial. We interpret the exchange between the two lawyers and the judge as follows: Defendant's attorney refused to stipulate to the reasonableness of the fee requested by plaintiff; however, he stipulated that if called as a witness, plaintiff's attorney would state what his fee was based on and would testify that the fee was reasonable. The trial judge then restated the stipulation as he understood it: "The stipulation would not go to the question of

---

**1.**  The statute now provides for $17 per day.  *See*  Utah Code Ann. § 21–5–4 (1991).

whether or not they are reasonable or whether they should be awarded, but that reasonableness would be his testimony." Defendant did not adduce any evidence regarding the reasonableness of the fee requested. Since we interpret the stipulation to be that plaintiff's attorney, if called, would testify that the requested fee was reasonable, we conclude that the evidence is sufficient to support the award of $2,000, one-half of the requested fee. The award to plaintiff is therefore reinstated.

Plaintiff further complains that the court of appeals denied her attorney fees on appeal. Because we resolve the main issue raised on appeal in favor of defendant, *viz.,* the valuation of the dental practice, we find no abuse of discretion in the denial. For that reason, plaintiff is denied attorney fees on this certiorari review.

## IV. CONCLUSION

The part of the decree of divorce concerning property division is reversed, and the case is remanded to the district court to make an equitable division in accordance with this decision and without regard to any value of goodwill or reputation of defendant's dental practice. We affirm the division of appraiser fee's, reinstate the $2,000 award of attorney fees, and affirm the denial of attorney fees on appeal to the court of appeals. We also deny attorney fees on this review.

HALL, C.J., concurs.

STEWART, Justice (Concurring):

I concur in the majority opinion except for the statement that the accounts payable should be offset against the accounts receivable. Whether the particular payables and receivables should be offset depends on the nature of each item. It may also be necessary to determine whether the particular accounts have been double-counted in determining defendant's income and the value of the marital estate, as could occur depending upon the nature of the accounting methods used. If one or another of the items has been taken into account for one such purpose, it should not be used a second time.

In my view, the treatment of those accounts should be left to the trial judge.

DURHAM, Justice (Dissenting):

I respectfully dissent. Defendant argues that the goodwill of a solo professional practice cannot be marital property. He cites *Jackson v. Caldwell,* 415 P.2d 667 (Utah 1966), for the proposition that a professional practice does not have any goodwill value. Stripped of dicta, that case stands for nothing more than that Jackson failed to prove that his former accounting partnership had any remaining goodwill for which it was accountable to him. *See id.* at 671. In that case, we simply upheld the factual findings of the district court.

Defendant cites *Dogu v. Dogu,* 652 P.2d 1308 (Utah 1982), as reaffirming his view of *Jackson.* Our decision in *Dogu* contains no analysis of this issue, only a simple statement, not referring to a trial court finding, that Dr. Dogu's medical practice had no "earning power" other than his ability to work. *Id.* at 1309. There is no mention of evidence about the value of the practice other than receivables and cash on hand, which were both accounted for in offsets and alimony. We certainly did not reject the concept of goodwill value in that case.

Defendant asserts that language in *Gardner v. Gardner,* 748 P.2d 1076 (Utah 1988), noting that "[g]ood will is properly subject to equitable distribution upon divorce," *id.* at 1080 n. 1, is dictum and that the facts of *Gardner* distinguish it anyway. I do not agree. What appears to be dictum in *Gardner* is intended to guide the trial court on remand. Although the facts of *Gardner* are different (Dr. Gardner was part of the twenty-three-member Ogden Clinic, while defendant is a sole practitioner), the distinctions do not make a difference here.

The real problem, and apparently a major reason for the disagreement between the majority and the dissent in the court of appeals, lies with the term "goodwill." The majority below went to some trouble to explain why goodwill could be marital prop-

erty subject to distribution, and the dissent took them to task for "trying to create 'new property' in the context of marriage dissolution." *Sorensen v. Sorensen,* 769 P.2d 820, 833 (Utah Ct.App.1989) (Jackson, J., dissenting).

If the issue before us were whether a specific dollar figure assigned to the "goodwill" of defendant's practice as a *separate* asset in that practice was supported by the evidence at trial, we would be faced with a more difficult question. However, the trial court's factual finding was that the value of defendant's dental practice was $100,000. The court made a comprehensive finding on value and did not break that figure down into specific categories, such as accounts receivable, equipment, or goodwill. In its conclusions of law, the court stated its "feeling that the large portion of the value of the practice has to do with good will and reputation built up in the practice over the years of marriage." The court's finding and conclusion are supported by the evidence and are consistent with the testimony of plaintiff's expert on dental practice appraisals.

No specific evidence was introduced by plaintiff on the value of "goodwill" as the parties use the term in their briefs.[1] Goodwill was merely the term used by the trial court to define that significant part of the value of the practice not directly attributable to accounts receivable and equipment and to allude to the reasoning behind its conclusion that eleven-sixteenths of the practice was marital property, as discussed hereafter.

The trial court accepted plaintiff's expert's valuation of the dental practice. This expert relied on a method that valued the intangible aspects of a practice by multiplying the annual gross receipts of the practice by a percentage factor (ranging from 20 to 100 percent) that took into account such variables as location of the practice, age of accounts receivable, ratio of accounts payable to gross revenues, age and condition of equipment, office atmosphere, etc.[2] The actual percent of gross revenues selected depended on these variables and was determined by the appraiser based on his experience and the information compiled by the dental practice brokerage firm to which plaintiff's expert belonged.

Plaintiff's expert valued defendant's practice at 34 percent of its gross annual revenues, plus discounted accounts receivable and equipment value. On cross-examination, the expert testified that this method of valuation did not break down the value of the practice, even though accounts receivable and equipment were valued separately. Plaintiff's expert testified that this was a standard method of valuing dental practices for sale and opined that most practices sold for more than 90 percent of appraised value. This method is not unlike methods commonly used to value other types of businesses and even commercial property.

Credibility of witnesses and valuation of property are within the trial court's discretion, which this court does not disturb unless it has been abused. *See, e.g., Sorensen,* 769 P.2d at 823. Defendant has not shown that the trial court abused its discretion. The majority opinion errs in identifying the issue in this case as an abstract one of whether the goodwill of a solo professional practice can be a marital asset. Rather, the issue should merely be one of proof: Did the plaintiff in this case put on sufficient evidence to support a finding of value consistent with her theory? The answer is yes. If a plaintiff, using admissible and reliable evidence, can convince a trial court that a solo professional practice has a specific value, then we should uphold that valuation, whether it includes goodwill or not. If the plaintiff's lawyer does a good

---

**1.** Although plaintiff's attorney and expert used the word "goodwill" several times in the course of the testimony on the value of defendant's practice, that testimony and the appraisal report admitted into evidence make clear that the term actually referred generally to all intangible aspects of value, including those discussed below.

**2.** Most of these factors are not relevant to goodwill as the term is used in the parties' briefs and in our cases. *See, e.g., Gardner,* 748 P.2d at 1080 n. 1.

job, the plaintiff's case will include goodwill whenever sufficient credible testimony can be adduced to support it.

In other words, I would hold that business and professional goodwill constitutes marital property *to the extent that market data establishes a value for it independent of the value of spousal earning capacity, spousal skills, and postmarital spousal labor.* Such a rule should allay the concerns expressed in the majority opinion. The majority's blanket prohibition of any consideration of goodwill as divisible marital property in any circumstances is overkill. *See Hanson v. Hanson,* 738 S.W.2d 429, 433–35 (Mo.1987).

In this case, the record reflects extensive expert testimony at trial regarding the fact that there is an economic (salable) value to the goodwill in this practice. There are experts who specialize in the sale of solo professional practices. In fact, this practice was for sale at the time of the divorce, listed by defendant himself at a price that included value for goodwill. I think the majority has overstepped the proper function of this court in substituting its "opinion" that solo practices cannot include value for goodwill in the narrow context of divorce, when such value is included for all other purposes and when such value was supported by expert testimony and the factual findings of the trial court.

I concur in all other portions of the majority opinion.

ZIMMERMAN, J., concurs in the dissenting opinion of DURHAM, J.