2019 UT App 38

# THE UTAH COURT OF APPEALS

HEATHER MARROQUIN,
Appellant,
*v.*
RENSON AMILICAR MARROQUIN,
Appellee.

Opinion
No. 20170454-CA
Filed March 14, 2019

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 144903963

Steve S. Christensen and Clinton R. Brimhall,
Attorneys for Appellant

James H. Woodall and Deborah L. Bulkeley,
Attorneys for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES KATE APPLEBY and JILL M. POHLMAN concurred.

HAGEN, Judge:

¶1      In 2005, Heather and Renson Marroquin were married. Prior to the marriage, Renson owned and operated a vending machine business.[1] After Heather filed for divorce in 2014, the value of that business became a central question in valuing the marital estate and distributing its assets. On appeal, Heather challenges the district court's valuation of the business, its failure to impose a due date or interest rate for payment of her

---

1. Because both parties share the same surname, we refer to them by their first names with no disrespect intended by the apparent informality.

half of the marital assets, and its denial of her motion to amend its findings and for a new trial. Because we conclude the district court did not exceed its discretion with respect to any of the issues raised by Heather on appeal, we affirm.

BACKGROUND

¶2     Before marrying Heather in 2005, Renson founded Deluxe Vending LLC and now owns a 99% interest in that company.[2] Deluxe Vending operates eighty-seven vending machines and three "micro-markets"[3] in numerous locations throughout Salt Lake City, Utah. For the first year of their marriage, and two summers following that, Heather helped Renson stock the vending machines throughout the day and count the money collected. Once she completed her education, Heather obtained other employment, but she continued to "help [Deluxe Vending] sporadically as needed or as requested."

¶3     Renson managed and conducted all of Deluxe Vending's business operations and had no other employees. He established personal relationships with the property owners, which allowed him to continue to operate his vending machines and micro-markets at their respective locations. Most of Deluxe Vending's contracts are on a month-to-month basis and can be replaced by other vendors at any time after the monthly contract ends.

¶4     In 2014, Heather filed for divorce. The primary issue at the parties' divorce trial was the value of Deluxe Vending and

_____

2. Heather is not the 1% interest owner of Deluxe Vending.

3. Deluxe Vending's micro-markets are "self-serve kiosks" that allow patrons to access food and beverage items from a cooler and then scan the item at the kiosk and pay with either a credit or debit card or with cash.

division of its assets. Each party obtained his or her own expert to testify to the business's value. Heather's expert is a certified public accountant who had "no credentials in the area of business valuation." Heather's expert initially valued Deluxe Vending between $725,000 and $900,000 but increased "his estimate to a range of $1,229,317 to $1,530,803" just before trial by using an "income approach to value the business," which includes "goodwill associated with the business." At trial, Heather's expert reduced his estimated value of Deluxe Vending to $700,000.

¶5     Renson's expert is a certified public accountant, with accreditations in business valuation and as a senior appraiser. He "devotes approximately 75% of his practice to performing business valuations and testifying as an expert." Following accepted industry practices of using the net asset approach, Renson's expert valued Deluxe Vending at $152,937. The value was determined by subtracting the fair market value of liabilities from the fair market value of assets and then subtracting "between a 5 and 10 percent marketability discount." In this case, Renson's expert "went on the low end and took [a] 5 percent" discount. Renson's expert opined that Deluxe Vending did not have any "institutional goodwill," but only personal or professional goodwill attributed solely to Renson. The expert explained that, "without the relationships that exist for the places where the vending machines are located, there is no potential for goodwill. There's no income earning capacity that would be in excess of the value of the assets." At trial, Renson's expert testified that Heather's expert was unreliable and opined that he "failed to follow accepted industry practices, that he relied on inaccurate information, and that he made unreasonable assumptions."

¶6     In its findings of fact, the court rejected Heather's expert's valuation and found Renson's expert to be more credible. It found that the business was worth $152,937, awarded Deluxe Vending to Renson, and ordered him to pay Heather "one-half of the value, or $76,468.50." The court also awarded alimony to

Heather and divided the equity of certain personal property in half. The court entered the divorce decree consistent with those findings of fact.

¶7 Heather filed a motion to amend the court's findings of fact or for a new trial (the post-judgment motion). In the post-judgment motion, Heather argued that the court erred in determining the value of Deluxe Vending because Renson testified at trial that some of the business's liabilities had been paid off since Renson's expert prepared the valuation report. Relatedly, she argued that the court should amend its findings to account for the institutional goodwill of the business rather than attribute the goodwill solely to Renson. Heather asked the court to set a date for Renson's payment to Heather for one-half the value of Deluxe Vending and the personal property award. She also asked the court to make findings "regarding Renson's dissipation of marital funds." Finally, she requested a new trial "because the court's method of ruling was irregular and surprising."

¶8 The court found that the post-judgment motion was Heather's "attempt[] to modify and add additional terms that were not presented as evidence at trial nor were they presented when [she] was given an additional opportunity to provide information to the Court due to lack of information and evidence at trial." Based on her "failure to provide the information as directed within the time frames set, the Court was left with only the information provided at trial upon which to make a determination." The court therefore denied the post-judgment motion.

¶9 Heather appeals.

ISSUES AND STANDARDS OF REVIEW

¶10 Heather raises three principal issues on appeal. First, Heather claims that the district court's valuation of Deluxe

Vending was clearly erroneous in two respects. She contends the court erroneously determined that any goodwill associated with Deluxe Vending was personal to Renson. Relatedly, she contends the court erred in accepting the appraisal value assigned by Renson's expert to Deluxe Vending several months before trial given that Renson testified at trial that the liabilities had been reduced. A district court is "entitled to a presumption of validity in its assessment and evaluation of evidence," and we defer to the district court's "findings of fact related to property valuation and distribution unless they are clearly erroneous." *Taft v. Taft*, 2016 UT App 135, ¶ 63, 379 P.3d 890 (quotation simplified). We "will not disturb a court's distribution of marital property unless it is clearly unjust or a clear abuse of discretion." *Id.* ¶ 32.

¶11   Second, Heather contends the court erred when it failed to set a due date or impose an interest rate on Renson's payment to Heather for one-half the value of Deluxe Vending and the one-half interest award of personal property. District courts "have considerable discretion in determining property distribution in divorce cases," *Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 8, 176 P.3d 476 (quotation simplified), and we will not disturb the district court's determination absent a clear abuse of discretion, *Taft*, 2016 UT App 135, ¶ 59.

¶12   Third, Heather contends the district court erred in denying the post-judgment motion because "the transcript showed that the district court had halted or interfered with [her] attempts to elicit testimony regarding dissipation of marital assets."[4] We will reverse a district court's denial of a motion for a

---

4. Heather also contends the district court "abused or entirely failed to exercise its discretion when it declined to factor dissipation of marital assets into its division of the parties' martial assets." This argument is unpreserved. "[P]arties are required to raise and argue an issue in the trial court in such a way that the court has an opportunity to rule on it." *State v.*

(continued…)

new trial or to amend the findings and judgment for abuse of discretion. *Bergmann v. Bergmann*, 2018 UT App 130, ¶ 12, 428 P.3d 89. "To the extent that our review turns on facts presented at trial, we defer to the trial court's underlying findings of fact, which shall not be set aside unless clearly erroneous." *Id.* (quotation simplified).

ANALYSIS

I. The Value of Deluxe Vending

¶13     Heather contends the district court made two errors when calculating the value of Deluxe Vending. First, she argues that the court should have included institutional goodwill in its calculation. Second, she argues the court's calculations of the value of the company should have taken into consideration Renson's testimony regarding the reduction in liabilities of Deluxe Vending. We address each argument in turn and

(…continued)

*Johnson*, 2017 UT 76, ¶ 18, 416 P.3d 443 (quotation simplified). Failure to do so "precludes a party from arguing that issue in an appellate court, absent a valid exception," such as plain error, ineffective assistance of counsel, or exceptional circumstances. *Id.* ¶¶ 18–19. Here, Heather never alleged at trial or in the post-judgment motion that the value of the marital assets should be adjusted to account for money Renson spent on non-marital assets. Nor did she identify Deluxe Vending's bank account as the asset depleted or suggest that the money Renson spent on non-marital expenses was taken from the joint checking account. Instead, Heather asked the court to consider the alleged dissipation only with respect to attorney fees and alimony. Because Heather failed to raise this issue before the district court and she has failed to argue that an exception to preservation applies, *see id.*, we decline to address it.

conclude that the court did not err when calculating the value of Deluxe Vending.

A.    Goodwill of Deluxe Vending

¶14    Heather contends the district court "should have included goodwill value in its calculations" of the value of Deluxe Vending. "In a divorce proceeding, determining and assigning values to marital property is a matter for the trial court and this court will not disturb those determinations absent a showing of clear abuse of discretion." *Dunn v. Dunn*, 802 P.2d 1314, 1317 (Utah Ct. App. 1990) (quotation simplified). "Marital property is ordinarily all property acquired during marriage and it encompasses all of the assets of every nature possessed by the parties, whenever obtained and from whatever source derived." *Id.* at 1317–18 (quotation simplified). Here, Renson does not dispute that Deluxe Vending is marital property subject to division. *See id.*

¶15    When valuing a business in marriage dissolution cases, district courts must consider whether goodwill is institutional or personal to one spouse. *See Sorensen v. Sorensen*, 839 P.2d 774, 775 (Utah 1992) (agreeing with "jurisdictions that do not treat [personal] goodwill as a marital asset to be divided"). Institutional, or enterprise, goodwill "is based on the intangible, but generally marketable, existence in a business of established relations with employees, customers and suppliers, and may include factors such as a business location, its name recognition and its business reputation." *See DeSalle v. Gentry*, 818 N.E.2d 40, 47 (Ind. Ct. App. 2004). Personal goodwill is based on an individual's "reputation for competency" and is not subject to distribution upon divorce. *Sorensen*, 839 P.2d at 775–76; *see also Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 44, 176 P.3d 476 ("There can be no good will in a business that is dependent for its existence upon the individual who conducts the enterprise and would vanish were the individual to die, retire or quit work." (quotation simplified)).

¶16    Here, the district court concluded that the only goodwill associated with Deluxe Vending was personal to Renson. The court found that Deluxe Vending was the type of sole proprietorship where the owner's goodwill is not a marital asset subject to division. Accordingly, the court did not consider Renson's personal goodwill in calculating the value of Deluxe Vending.

¶17    Heather argues that Deluxe Vending is distinguishable from the type of sole proprietorship where goodwill is not subject to division. For example, she cites *Sorensen*, in which the district court valued a sole-practitioner dental practice at $100,060 and determined that $62,560 of that value represented the personal "goodwill" of the husband. 839 P.2d at 775. The husband appealed the district court's decision, arguing that it "should not have included [personal] goodwill and reputation in its valuation of his dental practice." *Id.* Our supreme court determined that "the goodwill of a sole practitioner is nothing more than his or her reputation for competency." *Id.* "It may well be that if the sole practitioner retires at the time of a divorce and his or her practice is actually sold and an amount is realized over and above the value of the tangible assets, the full amount should be viewed as marital property." *Id.* But where no actual sale of the business takes place, personal goodwill "should not be treated differently from a professional degree or an advanced degree," and requiring the sole practitioner to pay the spouse "part of the value ascribed to the [personal] goodwill" would be inequitable. *Id.* at 775–76.

¶18    Relying on *Sorensen*, Heather asserts the district court made "no findings about [Renson] having a reputation that matters to the business's operation." Both the district court's oral and written findings of fact refute this assertion. The court specifically found that "the goodwill of Deluxe Vending is *solely* attributable to Renson's work, his efforts, and his reputation for competency" based on Renson "being the face of the business" and the "personal relationships" he has made with the property

owners that have allowed him to continue to conduct business, largely on a month-to-month basis.

¶19  Deluxe Vending is more akin to the car dealership at issue in *Stonehocker*. In that case, the district court determined that a used car dealership formed by the husband during the course of the marriage was "in reality a sole proprietorship" and the success of the used car dealership was "solely attributable to [the husband's] personal, professional reputation." *Stonehocker*, 2008 UT App 11, ¶¶ 6, 40, 43. This court agreed that the used car dealership was "essentially [the husband's] sole proprietorship," because the wife had "only token involvement" in the business, and its success was "the product of [the husband's] reputation, goodwill, and sole efforts." *Id.* ¶¶ 40–42 (quotation simplified). The district court therefore correctly concluded that the value of the used car dealership "did not include any amount for goodwill." *Id.* ¶ 43.

¶20  Here Renson owns 99% of Deluxe Vending and is the only employee of the business. He remains in contact with the entities that continue to allow Deluxe Vending to operate vending machines and micro-markets on the properties on a month-to-month basis. Heather's involvement in the business was minimal and limited to stocking the machines and counting the money at the beginning of the marriage. Thus, Renson is akin to the sole proprietor in *Stonehocker* and Heather had "only token involvement" in Deluxe Vending's operations. *See id.* ¶¶ 40–41 (quotation simplified).

¶21  Heather asserts that "anybody could step into [Renson's] shoes and carry on with the business under its name and with its assets," but she has not marshaled any record evidence that would support that assertion. *See id.* ¶ 9 (explaining that when a party challenges the findings of fact, the party "must first marshal the evidence in support of the findings and then demonstrate that the findings are unsupported by substantial evidence" (quotation simplified)). We therefore conclude that the district court did not exceed its discretion when it did not

include institutional goodwill in calculating the value of Deluxe Vending.

B.     Decreased Liabilities of Deluxe Vending

¶22    Heather contends the district court erred by basing its valuation of Deluxe Vending on the expert reports created prior to trial. Heather argues that the court should have valued the business as of the exact date of the divorce by accounting for Renson's trial testimony that he had further paid down the business's liabilities in the intervening months.

¶23    "Determining and assigning values to marital property is a matter for the trial court, and [we] will not disturb those determinations absent a showing of clear abuse of discretion." *Ebbert v. Ebbert*, 744 P.2d 1019, 1023 (Utah Ct. App. 1987). Because Heather did not argue at trial that the district court should adjust the appraised value of Deluxe Vending based on a reduction in its liabilities, she cannot show an abuse of discretion.

¶24    Here, both parties submitted expert reports regarding the value of Deluxe Vending several months before trial. A valuation is necessarily a snapshot in time and both parties relied on the experts' valuations when preparing for trial. Similarly, the district court relied on those expert reports and determined that Renson's expert's valuation was more credible. In the post-judgment motion, Heather cited portions of Renson's testimony, noting that some of Deluxe Vending's loans had been paid off or reduced. Heather argued that the court "should amend its findings consistent with the evidence at trial" by increasing the value of Deluxe Vending to account for the decrease in liabilities. Raising this factual issue for the first time in a post-judgment motion to amend the court's findings of fact did not give Renson the opportunity to present evidence as to whether there were other changes that affected the valuation of Deluxe Vending, such as a decrease in assets. And Heather has failed to demonstrate that she could not have requested the court

consider evidence outside of the experts' valuation reports at trial. *Cf. Hudema v. Carpenter*, 1999 UT App 290, ¶ 40, 989 P.2d 491 (affirming the district court's denial of a post-judgment motion for a new trial because "the evidence offered [in the post-judgment motion] could have been produced at trial with reasonable diligence"). Indeed, Heather elicited the testimony from Renson, but never asked the court to consider it when calculating the value of Deluxe Vending.

¶25 Heather cannot establish that the district court erred by not reducing the appraised value of Deluxe Vending, sua sponte, based on trial testimony regarding decreased liabilities. Nor has she shown that the district court abused its discretion in denying her post-judgment motion to amend its findings on grounds not presented at trial.

## II. Failure to Set Due Date or Interest Rate for Heather's Award of Marital Assets

¶26 Heather contends the district court "should have included an interest rate or due date" for her award of marital assets. Heather asserts that the court's failure to do so places her "at such a disadvantage" that it amounts to "an abuse of discretion." We disagree.

¶27 When the district court assigns a value to an item of marital property, the court must equitably distribute it "with a view toward allowing each party to go forward with his or her separate life." *Stonehocker v. Stonehocker*, 2008 UT App 11, ¶¶ 13, 15, 176 P.3d 476. We will not disturb the district court's payment determination absent a clear abuse of discretion. *Taft v. Taft*, 2016 UT App 135, ¶ 59, 379 P.3d 890; *see also Stonehocker*, 2008 UT App 11, ¶ 8.

¶28 Heather relies exclusively on *Taft* to support her argument. In *Taft*, the district court granted the husband "discretion to pay [the] judgment all at once or in monthly installments for a period of time." 2016 UT App 135, ¶ 57

(quotation simplified). The court did not order any minimum payment and provided that if the husband chose to make monthly payments, he "shall begin equal monthly payments, and the duration of such monthly installment payments shall not exceed a period of ten years, whereupon the balance shall be paid to [the wife] in one final balloon payment." *Id.* (quotation simplified). On appeal, the wife argued that this payment strategy was inequitable because it allowed the husband "to receive full immediate enjoyment of the assets awarded to him as well as the full use of [the wife's] share of the assets while [the wife was] deprived of meaningful access to her award." *Id.* ¶ 58 (quotation simplified). This court agreed, determining that the husband was "given nearly complete discretion regarding the payment to [the wife] of her share of the marital property over a ten-year period" at a low interest rate and that the wife, who had "been granted a substantial judgment in token of her share of the marital real property," had "no ability to collect, access, or substantially enjoy until ten years pass[ed], unless [the husband] decide[d] otherwise." *Id.* ¶ 59. This court therefore concluded "that the terms of [the wife's] property judgment [were] inequitable and that the trial court exceeded its discretion by structuring the terms of [the wife's] property judgment as it did." *Id.* ¶ 62.

¶29     This case is distinguishable from *Taft*. The district court in *Taft* gave the husband discretion to delay payment to the wife in an inequitable way. Unlike the spouse in *Taft*, Heather does not lack the "ability to collect, access, or substantially enjoy" her award of marital property. *See id.* ¶ 59. Instead, she can collect on the judgment just as any other judgment creditor. *See* Utah R. Civ. P. 62(a) (providing that "[n]o execution or other writ to enforce a judgment may issue until the expiration of 14 days after entry of judgment, unless the court in its discretion otherwise directs"). Heather acknowledges this ability in her brief on appeal, stating that Renson "can hold onto the assets and reap the benefits while [Heather] waits for payment *or expends time, effort, and money to enforce the divorce decree*." (Emphasis added.) Because Heather has not yet attempted to

enforce the divorce decree, she cannot show that she has been deprived of meaningful access to her award or prevented from going forward with her separate life. We therefore conclude the district court did not abuse its discretion when it did not impose a due date or interest rate for the payment of Heather's award of marital assets.

### III. Irregularity of Proceedings

¶30   Finally, Heather contends the district court erred in denying her motion for a new trial based on an irregularity of the proceedings. Heather argues that she attempted to establish a claim that Renson dissipated marital assets, but the court declined to address it and "cut off [Heather's] attempts to elicit testimony on the subject."

¶31   Following a bench trial, "a new trial may be granted to any party on any issue" if, among other circumstances, "there was an "irregularity in the proceedings . . . or abuse of discretion by which a party was prevented from having a fair trial." Utah R. Civ. P. 59(a)(1). "Because the grant of a new trial is ordinarily left to the sound discretion of the trial court, we will review the court's decision in this regard under an abuse of discretion standard." *Child v. Gonda*, 972 P.2d 425, 429 (Utah 1998). And "absent a showing by the appellant that the trial outcome would have differed, every reasonable presumption as to the validity of the [judgment] below must be taken as true upon appeal." *Id.*

¶32   Here, Heather asserts that the district court, "on several occasions . . . cut off [Heather's counsel's] questioning" of Renson regarding the claim of dissipation of marital assets. She claims that, on one occasion, Heather's counsel was "attempting to elicit testimony related to [Renson's] credibility and the finer details of the evidence," but the court "cut off the questioning" and "asked [Renson] point blank if he was hiding money." Heather argues that this was "uniquely harmful" because it "was an unfair boon to [Renson]" and that the effect was to

"shield[]" Renson "from questions about his waste of marital assets." We disagree.

¶33 When determining "whether a party should be held accountable for the dissipation of marital assets," there are "a number of factors that may be relevant," including (1) "how the money was spent, including whether funds were used to pay legitimate marital expenses or individual expenses"; (2) "the parties' historical practices"; (3) "the magnitude of any depletion"; (4) "the timing of the challenged actions in relation to the separation and divorce"; and (5) "any obstructive efforts that hinder the valuation of the assets." *Rayner v. Rayner*, 2013 UT App 269, ¶ 19, 316 P.3d 455. "While marital assets are generally valued as of the date of the divorce decree, where one party has dissipated an asset, hidden its value or otherwise acted obstructively, the trial court may, in the exercise of its equitable powers, value a marital asset at some time other than the time the decree is entered, such as at separation." *Parker v. Parker*, 2000 UT App 30, ¶ 13, 996 P.2d 565 (quotation simplified).

¶34 Our review of the record shows that Heather's counsel asked questions about spending money, but never directly asked Renson whether the money came from either the company account or a joint checking account. *See id.* Instead, Heather's counsel asked questions about where, when, and how much money Renson spent. The court interjected, stating, "Let's just cut to the chase, do you have any other squirrel holes or nest eggs that you've been hiding or putting money in . . . that you didn't report in your financial declarations and did not disclose to [c]ounsel?" Renson said he did not. Heather's counsel then pursued a different line of questioning. When Heather's counsel attempted to ask Renson again about where and when he spent his money, Renson's counsel objected as to relevance, arguing that "unless [Heather] ties it to a business expense that's been improperly claimed, he can spend his money on anything he wants." *See id.* Heather's counsel argued that it was relevant to the court's consideration regarding attorney fees. The court sustained the objection and explained that "what people do with

their income and how they spend it" is irrelevant. *Cf. Rayner*, 2013 UT App 269, ¶ 19.

¶35    Because Heather never asked the court to find that Renson's personal spending decreased the value of the company or any other marital asset, the questions did not go to a material issue or fact in dispute. Heather had the opportunity at trial, on numerous occasions, to direct the court to specific assets that had been dissipated by Renson's spending, but she did not. Heather therefore cannot show that she did not have the opportunity to present the issue to the district court or that she was denied a fair trial. *See* Utah R. Civ. P. 59(a)(1). Accordingly, the district court did not abuse its discretion when it denied her motion for a new trial based on an irregularity in the proceedings.

## IV. Attorney Fees

¶36    Renson seeks attorney fees incurred on appeal under rule 33 of the Utah Rules of Appellate Procedure, arguing that Heather's appeal was "frivolous or for delay." Rule 33 allows for the sanction of "just damages, which may include . . . reasonable attorney fees" to the prevailing party if an appeal "is not grounded in fact, not warranted by existing law, . . . not based on a good faith argument . . . or [if taken] for the purpose of delay." Utah R. App. P. 33(a),(b). "The sanction for bringing a frivolous appeal is applied only in egregious cases, lest there be an improper chilling of the right to appeal erroneous lower court decisions." *Maughan v. Maughan*, 770 P.2d 156, 162 (Utah Ct. App. 1989) (quotation simplified). Although Heather has not been successful on appeal, her arguments were "worthy of consideration and should not be subject to the chilling effect" of rule 33 sanctions. *See id.*

## CONCLUSION

¶37    We conclude the district court did not exceed its discretion when it calculated Deluxe Vending's value without

including institutional goodwill and when it did not recalculate the value of Deluxe Vending based on testimony elicited at trial regarding a reduction of liabilities. We further conclude the court did not exceed its discretion by not imposing a deadline on or interest rate for Renson's payment to Heather where there are no limitations on her ability to enforce the judgment. And because Heather failed to show an irregularity in the proceedings, we conclude the court did not exceed its discretion when it denied the post-judgment motion for a new trial. Accordingly, we affirm.

————