**2022 UT App 27**

# THE UTAH COURT OF APPEALS

DEAN ERICKSON,
Appellee,
*v.*
JANICE ERICKSON,
Appellant.

Opinion
No. 20200193-CA
Filed March 3, 2022

Third District Court, Salt Lake Department
The Honorable Todd M. Shaughnessy
No. 174901105

Albert N. Pranno, Attorney for Appellant

Jordan M. Putnam, Attorney for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN
FORSTER concurred.

HAGEN, Judge:

¶1     During their thirty-four years of marriage, Dean and
Janice Erickson acquired substantial assets, including a
veterinary pharmaceutical business.[1] But, in anticipation of their
divorce, Janice engaged in an intentional scheme to dissipate
those assets and devalue the marital estate. Solely because of
Janice's misconduct, the district court appointed a receiver,
ordered a valuation of the couple's business, and sanctioned

---

1. As is our practice when parties share the same last name, we
refer to each by their first names, intending no disrespect to
either party.

Janice with the obligation to pay all Dean's attorney fees and costs.

¶2     Janice now contends that the court erred when it failed to deduct her personal goodwill when calculating the value of the couple's business, excluded her rebuttal expert on valuation, and imposed sanctions against her that were greater than the injury her misconduct caused Dean. We affirm on the first two issues and remand on the third.

BACKGROUND[2]

¶3     Dean filed for divorce from Janice in early 2017. The couple's marital estate consisted of substantial assets, including a veterinary pharmaceutical business, Meds for Vets, LLC (Meds). Meds "is a pharmaceutical compounding business with many employees." The company "does the majority of its business online through its website" and sells "to customers throughout the country." At the time of the divorce, Meds employed three pharmacists who held the necessary licenses to conduct the business. Janice was one of those pharmacists and held "the majority of the licenses." Janice also functioned "as the sole manager and chief executive officer of Meds."

¶4     Around the time Dean filed for divorce, Janice entered into a series of fake business contracts with a friend for the purpose of dissipating marital assets. Dean moved the court for

_____

2. "On appeal from a bench trial, we view the evidence in a light most favorable to the trial court's findings, and therefore recite the facts consistent with that standard, and we present conflicting evidence to the extent necessary to clarify the issues raised on appeal." *Nakkina v. Mahanthi*, 2021 UT App 111, n.2, 496 P.3d 1173 (cleaned up).

a temporary restraining order, asking the court to appoint a receiver for Meds. The court denied the temporary restraining order but appointed a receiver for Meds in an effort "to prevent further irreparable injury/harm to the marital estate through waste/dissipation of marital assets." At the recommendation of the receiver, Janice was allowed to continue her role in the company due to her "familiarity with the industry, regulatory environment and existing relationship[] with the customer base . . . so as to not disrupt [Meds'] operations and employees."

¶5     In addition to the oversight of Meds, the receiver had authority to conduct an "investigation concerning whether and how the joint marital assets . . . were used or misused and how to effectively separate the parties and their marital estate in all business regards." In its final report to the court, the receiver concluded that Janice had dissipated known marital assets totaling $2,247,274. Janice accomplished that feat, in part, by unilaterally entering into a fraudulent "business relationship which resulted in a substantial and ongoing dissipation of marital assets."

¶6     The receiver was also charged with "perform[ing] a valuation of the normalized operation of Meds." The final report included a business valuation placing Meds' value at $1,560,000. The valuation report explained the different factors considered, including "whether or not the enterprise has goodwill or other intangible value." Ultimately, the valuation did not include any amounts associated with goodwill.

¶7     The court scheduled a trial on December 2, 2019, the Monday after the Thanksgiving holiday, to determine the final division of the marital estate. The pretrial disclosure deadline was set for November 4, but Janice moved to extend the deadline. The court granted her motion, extending the deadline to Tuesday, November 26 at 5:00 p.m.

¶8     Just before 5:00 p.m. on November 26, Janice filed a disclosure that identified a valuation expert she intended to call as a rebuttal witness. But she did not serve the disclosure on Dean's attorney until after the deadline had passed. In addition, she did not provide the expert's report to Dean's attorney until the afternoon of Wednesday, November 27—the day before Thanksgiving and less than five days before trial.

¶9     On the first day of trial, Janice asked to call her valuation rebuttal expert as the first witness because it was the only day he was available to testify. Dean objected to the admission of the expert's testimony because it was untimely disclosed, giving Dean insufficient time to prepare. The court allowed Janice to call the expert out of order and reserved its ruling on Dean's objection until after the expert testified. During his testimony, the expert opined that the receiver's valuation had overstated Meds' value as an ongoing business by improperly considering Janice's personal goodwill.

¶10    The court ultimately excluded the expert's testimony based on Janice's untimely disclosure. *See* Utah R. Civ. P. 26(d)(4) ("If a party fails to disclose or to supplement timely a disclosure or response to discovery, that party may not use the undisclosed witness, document, or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure.") The expert had testified that it had taken him only a few weeks to prepare his report, but that Janice had not hired him until shortly before trial. Accordingly, the court found that Janice "had ample opportunity to seek an independent valuation of the marital businesses at her own expense" and noted that it had "addressed this issue with [Janice] several times." The court further found that Dean had an "understandable inability to be able to fully address [that information] in the limited time that remained prior to trial."

¶11   The court alternatively ruled that even if it had not excluded Janice's valuation rebuttal expert as untimely, his testimony was unpersuasive. The court rejected the expert's opinion, based on Janice's own representations, that Meds' value was dependent on Janice's personal goodwill. The court noted that Utah case law generally associates personal goodwill with "sole proprietorships essentially run by one person" and that such businesses are not "comparable to the situation here with [Meds]." The court also found that it had "not been provided any evidence from which [it could] draw a conclusion that [Janice's] presence at [Meds], given the point to which its grown, is essential for that business to continue, given the number of employees and the extent of the operations that it has."

¶12   After trial, the court entered a supplemental decree regarding the division of marital assets. The court "affirm[ed] and accept[ed] all recommendations, valuations, findings, and conclusions contained" in the receiver's reports, unless the decree stated otherwise, "and incorporate[d] them by reference" into the decree, including the receiver's $1,560,000 valuation of Meds.

¶13   Due to Janice's "intentional efforts to dissipate marital assets," the court also assigned the cost of the receivership and Dean's attorney fees to Janice as a sanction for contempt and other misconduct. The court found that Janice's behavior was sanctionable because she "engaged in substantial dissipation of marital assets" that was, "in some cases, in direct violation of this Court's orders." Indeed, "the approximately $2.5 million [she] dissipated . . . was one of the largest, if not the largest, blatant dissipation of marital assets the Court ha[d] ever seen."

¶14   With respect to Dean's legal fees, the court found that Janice's contemptuous conduct forced Dean to incur "extraordinary legal costs in enforcing Court orders and attempting to track down and preserve marital assets" and that a

"substantial amount of additional work [was] required to address the dissipation issues in this case" because of Janice. The court found that it was therefore appropriate and equitable to assign all Dean's attorney fees to Janice because "[t]he lion's share of [Dean's] legal costs were incurred in connection with issues surrounding the dissipation of marital assets and the nefarious conduct engaged in by [Janice] in this case."

¶15 More than three months after trial, Janice filed a motion for new trial pursuant to rule 59 of the Utah Rules of Civil Procedure, arguing that there was irregularity in the trial proceedings, that there was insufficient evidence to support the valuation of Meds, and that the court erred in awarding Dean attorney fees. The court dismissed that motion as untimely without reaching the merits.

ISSUES AND STANDARDS OF REVIEW

¶16 Janice now appeals, raising three issues. First, she contends the district court erred in the value it assigned to Meds because it failed to exclude the value of her personal goodwill. A district court is "entitled to a presumption of validity in its assessment and evaluation of evidence, and we defer to the district court's findings of fact related to property valuation and distribution unless they are clearly erroneous." *Marroquin v. Marroquin*, 2019 UT App 38, ¶ 10, 440 P.3d 757 (cleaned up).

¶17 Second, she contends the court erred in excluding her valuation rebuttal expert as a sanction for untimely disclosure. "We review a district court's decision [to impose] sanctions under rule 26(d)(4) for an abuse of discretion." *Segota v. Young 180 Co.*, 2020 UT App 105, ¶ 10, 470 P.3d 479 (cleaned up). We will find abuse of discretion where there exists an erroneous conclusion of law or "where there is no evidentiary basis for the trial court's ruling." *Arreguin-Leon v. Hadco Constr. LLC*, 2018 UT

App 225, ¶ 15, 438 P.3d 25 (cleaned up), *aff'd* 2020 UT 59, 472 P.3d 927.

¶18    Third, she contends that the court erred when it ordered her to pay all Dean's attorney fees and costs, rather than limiting the award to the amounts caused by her sanctionable conduct. "Both the decision to award attorney fees and the amount of such fees are within the sound discretion of the trial court." *Taft v. Taft*, 2016 UT App 135, ¶ 86, 379 P.3d 890 (cleaned up).


ANALYSIS

I. The Valuation of Meds

¶19    In her challenge to the district court's valuation of Meds, Janice argues that the court failed to consider the value of her personal goodwill.[3] "When valuing a business in marriage

---

3. Janice also argues that there was "[i]rregularity in the proceedings" because the receiver "hire[d] a business valuator who is . . . a partner with the receiver at the [same] firm." But this issue was not preserved. *See Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48, ¶ 14, 48 P.3d 968 (explaining that for an issue to be preserved "(1) the issue must be raised in a timely fashion; (2) the issue must be specifically raised; and (3) a party must introduce supporting evidence or relevant legal authority" (cleaned up)). Janice did not challenge this alleged irregularity below. It appears that Janice may have attempted to raise the issue in a motion pursuant to rule 59 of the Utah Rules of Civil Procedure, *see* Utah R. Civ. P. 59(a)–(a)(1) (providing that "a new trial may be granted to any party on any issue" because of "irregularity in the proceedings of the court, jury or opposing party, or any order of the court, or abuse of discretion by which a party was prevented from having a fair trial"), but the district

(continued…)

dissolution cases, district courts must consider whether goodwill is institutional or personal to one spouse." *See Marroquin v. Marroquin*, 2019 UT App 38, ¶ 15, 440 P.3d 757. Goodwill is personal when the business "is dependent for its existence upon the individual who conducts the enterprise and would vanish were the individual to die, retire or quit work." *Stevens v. Stevens*, 754 P.2d 952, 956 (Utah Ct. App. 1988). Personal goodwill is based on an individual's "reputation for competency." *Marroquin*, 2019 UT App 38, ¶ 15. And unlike institutional goodwill, personal goodwill is not subject to distribution in the marital estate. *Id.*

¶20 Janice contends that the district court erred as a matter of law by failing to consider whether the value of the business depended on goodwill that was personal to her and thus not divisible. We disagree. The district court did consider goodwill in valuing the business, but specifically found that there was no personal goodwill associated with Meds. Unless the court clearly erred, we presume this assessment is valid and we defer to its findings. *See id.* ¶ 10.

¶21 In finding that there was no personal goodwill associated with Meds, the court rejected Janice's contention that Meds was comparable to a sole proprietorship and that her "personal goodwill, as opposed to entity or enterprise goodwill," should have been excluded in valuing the company. The court concluded that Meds was unlike "sole proprietorships

---

(…continued)

court properly refused to consider that motion as untimely, and the issue is therefore unpreserved for appeal, *see Tschaggeny v. Milbank Ins. Co.*, 2007 UT 37, ¶ 30, 163 P.3d 615 (holding that an issue raised in an untimely posttrial motion was not preserved for appellate review where district court "properly refused to address the" untimely motion).

essentially run by one person"—where the value of the company rests primarily on the work and professional reputation developed by the proprietor—"given the number of [Meds] employees and the extent of its operations."

¶22 On appeal, Janice claims that the court failed to consider the personal goodwill engendered by her own "management and licensure role" in Meds. Before the receiver's appointment, Janice "had acted as sole manager and chief executive officer of the company," but there was no evidence to suggest that placing someone else in that role would diminish the value of the company. Indeed, the court specifically found that it had not been "provided any evidence from which [it could] draw the conclusion that her presence at the business, given the point to which it's grown, is essential for that business to continue given the number of employees and the extent of operations it has." Janice has not demonstrated that those findings were clearly erroneous.

¶23 As evidence of her personal goodwill, Janice cites the receiver's report that some Meds employees "attributed the company's declining revenue, in part, to [Janice] being distracted by the divorce." But the decline in Meds' revenue during this period does not suggest that the company's value was dependent on Janice being in a management role. To the contrary, the court found that Janice's continued involvement was detrimental because she "continue[d] to take steps to harm and devalue" Meds, even after the appointment of the receiver. In other words, Meds' declining revenue during that time was caused not by Janice's inattention to her management role, but by her deliberate efforts to devalue the company.

¶24 Janice also points to the fact that the company used her licenses to operate in multiple states. The court found, however, that Meds holds the necessary pharmacy licenses among three pharmacists. And there was no evidence that Janice's licenses

could not be obtained by the other pharmacists already on staff or that Meds could not hire a replacement pharmacist with those licenses. Thus, the fact that some licenses were historically held by Janice does not undermine the court's finding that the value of Meds as an ongoing business did not depend on Janice's involvement.

¶25 In sum, the record shows that the court considered and rejected Janice's contention that her personal goodwill was included in the valuation of the business, and Janice has not shown that those findings were clearly erroneous. Therefore, there is no basis on which to disturb the court's valuation of Meds.

## II. Excluding Janice's Rebuttal Expert

¶26 Next, Janice challenges the court's ruling excluding her valuation rebuttal expert based on her untimely disclosure. Expert disclosures are governed by rule 26 of the Utah Rules of Civil Procedure. Under that rule, proper disclosure of an expert witness requires the timely disclosure of "(i) the expert's name and qualifications, . . . (ii) a brief summary of the opinions to which the witness is expected to testify, (iii) the facts, data, and other information specific to the case that will be relied upon by the witness in forming those opinions, and (iv) the compensation to be paid for the witness's study and testimony." Utah R. Civ. P. 26(a)(4)(A). "If a party fails to disclose or to supplement timely a disclosure or response to discovery, that party may not use the undisclosed witness, document, or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure." *Id.* R. 26(d)(4). "Thus, Utah law mandates that a trial court exclude an expert witness disclosed after expiration of the established deadline unless the district court, in its discretion, determines that good cause excuses tardiness or that the failure to disclose was harmless." *Solis v. Burningham Enters. Inc.*, 2015 UT App 11, ¶ 21, 342 P.3d 812 (cleaned up); *see also*

*Arreguin-Leon v. Hadco Constr. LLC*, 2018 UT App 225, ¶ 22, 438 P.3d 25 ("[I]f a party fails to disclose or supplement a discovery response, the evidence or testimony may not be used."), *aff'd* 2020 UT 59, 472 P.3d 927.

¶27 Janice does not dispute that the disclosure of her valuation expert and his report was untimely. The question is whether Janice established an exception to the otherwise mandatory sanction of exclusion under rule 26(d)(4). We conclude that the district court did not exceed its discretion in rejecting Janice's claim that her untimely expert disclosure was either harmless or justified.

¶28 First, the record amply supports the court's conclusion that the untimely expert disclosure was not harmless. The court enlarged Janice's time to serve her disclosures, extending her deadline from November 4 to November 26 at 5:00 p.m.—a mere six days before trial. On November 26, "shortly before 5:00 p.m." Janice filed her expert disclosure with the court, but she did not serve that disclosure on Dean's counsel until after the 5:00 p.m. deadline. Moreover, she did not serve the expert report until the following afternoon, the day before Thanksgiving. The timing left only the holiday weekend for Dean's counsel to review the expert report and prepare to meet that testimony before the trial began on Monday. On the first day of trial, Janice called her rebuttal expert witness out of order, depriving Dean of any additional time he might have had to prepare during the course of the trial. The purpose of rule 26 is to eliminate unfair surprise and provide the opposing party with a reasonable opportunity to prepare for trial. *Drew v. Lee*, 2011 UT 15, ¶ 28, 250 P.3d 48. Here, the late disclosure deprived Dean of a reasonable opportunity to prepare to rebut the newly disclosed expert's testimony. Under these circumstances, the district court acted well within its discretion in concluding that the late disclosure was not harmless.

¶29 Second, the record also supports the court's determination that Janice had no good reason to delay disclosing her expert and his report. The court found that it gave Janice "months" to "call an expert to dispute the valuation that was done by the court-appointed receiver," yet she waited until "a couple weeks" before trial to hire her valuation rebuttal expert. Moreover, the court found that Janice's excuse for not hiring an expert—that she was waiting because she wanted the marital estate to pay for the expert—"carrie[d] no water with [the court]" because the court had made clear, at least since the previous August, that Janice had to pay for her own rebuttal valuation expert. Under these circumstances, the district court did not exceed its discretion in finding that the delay was unjustified.

¶30 We conclude that the district court did not abuse its discretion in finding that Janice's untimely disclosure was neither excused for good cause nor harmless to Dean. Therefore, the district court correctly applied the automatic sanction dictated by rule 26(d)(4) and excluded the expert's testimony.

### III. Sanction of Attorney Fees and Costs

¶31 On appeal, Janice does not challenge the court's finding that she engaged in sanctionable conduct and acknowledges that "the bulk of the court's award of fees and allocation of costs were within the court's authority." Instead, she argues that the award was excessive because it included some attorney fees and costs not attributable to her sanctionable conduct. Because we cannot determine whether the attorney fees award exceeded the costs that Dean incurred as a result of Janice's sanctionable conduct, we remand to the district court for further proceedings.

¶32 "[W]hen a court imposes an award of fees or costs as a sanction, its award must be limited to the amount actually incurred by the other party" as a result of the sanctionable

conduct. *Goggin v. Goggin*, 2013 UT 16, ¶ 36, 299 P.3d 1079. In *Goggin*, the district court awarded the former wife all her attorney fees and costs after finding that they were "largely due to [her former husband's] untoward and contemptuous behavior." *See id.* ¶ 38 (cleaned up). Our supreme court reasoned that "this language implies that [the former wife] may have been awarded at least some attorney fees and out-of-pocket costs that were not caused by [the former husband's] contemptuous behavior." *Id.* (cleaned up). The supreme court therefore held that the district court had exceeded its discretion by awarding costs and fees in excess of the amount attributed to the sanctionable conduct. *Id.*

¶33 Here, it is not clear whether the district court limited the award to the fees and costs that Dean incurred as a result of Janice's sanctionable conduct. In assigning the entire cost of Dean's attorney fees and expenses to Janice, the court found that Dean had incurred "extraordinary legal costs in enforcing Court orders and attempting to track down and preserve marital assets" and that a "substantial amount of additional work [had been] required to address the dissipation issues in this case." Yet the court also found that Dean's legal fees and costs "incurred in connection with issues surrounding the dissipation of marital assets and the nefarious conduct engaged in by [Janice]" merely constituted the "lion's share" of Dean's legal fees. Like the district court's use of the term "largely" in *Goggin*, the use of the term "lion's share" here suggests that a portion of Dean's fees and costs were not the direct result of Janice's sanctionable conduct. To the extent that the attorney fees award included such additional costs, it exceeded the district court's discretion.

¶34 Accordingly, we vacate the attorney fee award and remand for further proceedings. On remand, the district court should either make findings to support the determination that all Dean's legal expenses were caused by Janice's sanctionable

conduct or modify the award to exclude any amounts not caused by that conduct.[4]

## CONCLUSION

¶35   Janice has not shown that the court failed to consider goodwill in valuing the business or that it clearly erred in finding that there was no personal goodwill associated with Meds. Nor has she shown that the court exceeded its discretion in determining that her untimely expert disclosure was not harmless or justified. However, to the extent that the attorney fees award exceeded the costs Janice's sanctionable conduct caused Dean to incur, the court exceeded its discretion in granting that award. Therefore, we remand for further proceedings on that issue consistent with this opinion.[5]

---

4. Dean argues that even if the district court awarded attorney fees and costs not attributable to Janice's contemptuous behavior, that error was harmless because a mathematical error resulted in Janice not paying the intended award. If the district court determines that "a clerical mistake or a mistake arising from oversight or omission" has occurred, the court may correct the mistake on remand. *See* Utah R. Civ. P. 60(a).

5. "Although [Dean] requests attorney fees on appeal, because the trial court awarded [him] attorney fees only as a sanction for [Janice's] conduct during litigation, we deny that request." *Liston v. Liston*, 2011 UT App 433, ¶ 27, n.6, 269 P.3d 169.